**In re SUPER SPUD, INC., Debtor.**

**EAST COAST POTATO DISTRIBUTORS,**
**Plaintiff,**

**v.**

**Charles W. GRANT, Trustee, Defendant.**

**Bankruptcy No. 85–1169–BKC–3P7.**
**Adv. No. 87–33.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 17, 1987.

Kathryn A. Ledig, Washington, D.C., for plaintiff.

Ronald Bergwerk, Jacksonville, Fla., for defendant.

MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This cause is before the Court upon cross motions for summary judgment. The parties have submitted written arguments supporting their motions and have had adequate opportunity to respond to the argu-

ments filed by opposing counsel. Stipulated facts have been filed. Upon a review of the entire record, the Court grants summary judgment in favor of the plaintiff.

## FACTS

The debtor, Super Spud, Inc., was engaged in the business of buying and selling perishable agricultural commodities. Between July 17, 1985, and September 5, 1985, it received twenty truck loads of potatoes from East Coast Potato Distributors for a total agreed price of $36,184.06.

Plaintiff is a corporation licensed under the Perishable Agricultural Commodities Act of 1930, as amended in 1984, 7 U.S.C. 499a *et seq.* (PACA), and is engaged in the business of supplying agricultural commodities. On July 30, 1985, and again on September 18, 1985, plaintiff timely filed notice of its intent to preserve trust benefits under 7 U.S.C. 499e(c). The United States Department of Agriculture responded by issuing two certificates of trust protection (NJ01055, DC04833) in the aggregate amount of $7,767.08.

Virtually all of the assets of the bankruptcy estate are comprised of the proceeds from the collection of debtor's accounts receivable. Because of the fungible nature of the goods sold by the debtor, the defendant is unable to ascribe any particular receivable to a specific shipment received by the debtor. In like manner the plaintiff has been unable to trace the proceeds from debtor's sale of the potatoes to any one account.

Plaintiff has filed this action to compel the defendant/trustee to turnover funds due from the sale of the potatoes. It argues that PACA creditors are entitled to absolute priority as beneficiaries of a statutory trust in much the same way that certain creditors are protected under the Packers and Stockyards Act, 7 U.S.C. 196. The defendant does not dispute the existence of the debt but argues that the claim is subordinate to that of the trustee. Thus, the central issue to be resolved is whether PACA imposes a statutory trust upon the proceeds of the debtor's accounts receivables. If so, those assets are not part of the bankruptcy estate but belong to beneficiaries of the trust. This court concludes that it does.

## DISCUSSION

Bankruptcy Code Section 541(d) states:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, *but not to the extent of any equitable interest in such property that the debtor does not hold.* 11 U.S.C. 541(d) [emphasis added].

■ The corpus of a secured PACA trust is just such an equitable interest and is not to be considered property of the debtor's estate. *See In re Fresh Approach,* 51 B.R. 412, 419 (Bkrtcy.N.D.Tex.1985). Thus, in the instant action, the property held by the bankrupt in trust properly belongs to plaintiff, a trust beneficiary, and never became part of the bankruptcy estate. Since the property is outside the estate, the beneficiary is entitled to priority ahead of all other creditors and defeats the claim of the Trustee.

Much support for this position is drawn from an analogy to the Packers and Stockyards Act, 7 U.S.C. 196, (PSA). That act too imposes a trust in favor of unpaid sellers on the inventories of commodities and products derived therefrom and on the proceeds of the sale of such commodities and products in the hands of the commission merchant, dealer or broker. The Congress found that the trust provisions of that act have operated successfully without imposing a regulatory burden on the industry and served as a model for the PACA. *See* H.R.Rep. No. 98–543, 98th Cong., 1st Sess. 4 (1983) *reprinted in* 1984 U.S.Code Cong. & Admin.News 405, 407. Cases interpreting the PSA have held that assets subject to the PSA are not property of the estate, and are subject to division outside the distribution scheme found in the bankruptcy law. *See In re Gotham Provision Co., Inc.,* 669 F.2d 1000 (5th Cir.1982).

PACA was also designed to operate in much the same manner as a constructive trust would operate in bankruptcy cases. Cases in this area have consistently held that the estate's interests are subordinated to the claims of the beneficiaries. *See Matter of Quality Holstein Leasing*, 752 F.2d 1009, 1012 (5th Cir.1985), "[t]he trustee (may be required) to turn over to the beneficiary of a state law constructive trust the property that the debtor holds subject to such a trust.... The debtor retains the legal title, but the constructive trust beneficiary may reclaim in full his equitable interest in bankruptcy proceedings." (citing *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 968 (5th Cir. 1983)).

The trustee in this action has argued that PACA does not create a statutory trust but rather creates a secured priority status for the PACA supplier. There is little support for this argument. The better view, and the one to which this court will subscribe, is that PACA trust beneficiaries, such as plaintiff in this case, take complete priority in payment as to all the assets of the debtor, ahead of the claims of creditors who have valid security interests, ahead of the administrative costs and expenses incurred in this court, and ahead of all other priority and general creditors. *See In re Fresh Approach*, 51 B.R. 412, 419 (Bkrtcy.N.D.Tex.1985); *In re Kennedy & Cohen, Inc.*, 612 F.2d 963, 965 (5th Cir.1980), *cert. denied sub. nom. Wisconsin v. Reese*, 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980).

Because the claims of PACA creditors far exceed the amount of assets in the estate, the trustee has argued that the position this court has taken is unfair in that it fails to compensate the trustee for his efforts in collecting the estate's assets. This, he argues, obligates him to collect the estate's assets for the benefit of the PACA trust beneficiaries with no reimbursement for his own expenses. While this result is unfortunate, this court can find no support for the trustee's argument that the PACA claims be subordinated to that of the trust-ee. Perhaps this is something Congress should address in the future.

## CONCLUSION

The Court will separately enter a Final Summary Judgment to include the following:

1. The plaintiff's motion for summary judgment will be granted.

2. The defendant trustee's motion for summary judgment will be denied.

3. Plaintiff will be entitled to turnover from Trustee pursuant to its two certificates of trust protection in the amount of $7,767.08.